UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WORLD WRESTLING ENTERTAINMENT, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:13cv00125(RNC) |
| | ) | |
| v. | ) | |
| | ) | |
| SOLAR ENTERTAINMENT CORP., | ) | FEBRUARY 19, 2014 |
| | ) | |
| Defendant. | ) | |

**WWE'S MEMORANDUM IN OPPOSITION TO SOLAR'S MOTION FOR LEAVE TO AMEND RESPONSE TO PLAINTIFF WWE'S COMPLAINT,
OR, IN THE ALTERNATIVE,
MEMORANDUM OF LAW IN SUPPORT OF A RENEWED MOTION TO DISMISS COUNTERCLAIMS AND TO STRIKE AFFIRMATIVE DEFENSES**

Plaintiff World Wrestling Entertainment, Inc. ("WWE") hereby opposes the motion by defendant Solar Entertainment Corporation ("Solar") for leave to amend its "Response" to WWE's Complaint. For the reasons stated in support of WWE's pending Motion to Dismiss Solar's Counterclaims and Strike Its Affirmative Defenses (*see* Docs. 40, 41, and 65), as supplemented herein, Solar's proposed amendment would be futile. In the alternative, should the Court grant Solar's motion for leave to amend, WWE hereby renews its motion to dismiss Solar's counterclaims and to strike its affirmative defenses, and, as support therefor, relies on its prior moving brief and reply (Docs. 41 and 65), as supplemented herein.

### I.  PROCEDURAL HISTORY

WWE commenced this case on January 25, 2013, by Complaint seeking primarily liquidated sums due under certain agreements between WWE and Solar. (Doc. 1.) On October 25, 2013, Solar launched a multi-pronged attack, seeking either to terminate the litigation or to expand it dramatically. It simultaneously moved to dismiss WWE's Complaint for lack of personal jurisdiction and improper service (Doc. 22), sought to implead Studio 23, Inc. and Fox

International Channels Philippines, Inc. ("Fox") as third-party defendants (Doc. 24), and filed an Answer (denominated its "Response") to WWE's Complaint, interposing six counterclaims and ten affirmative defenses, including, among others, claims of fraud, unconscionability, waiver, laches, unclean hands, and tortious interference, as well as breach of contract and breach of the duty of good faith and fair dealing.  (Doc. 25).[1]

During a pre-filing conference held on November 21, 2013 to discuss WWE's desire to move to dismiss Solar's counterclaims and to strike its affirmative defenses, Solar declined the Court's invitation to amend its Response, and the Court granted WWE leave to make its motion. On December 12, 2013, WWE filed its motion to dismiss and strike (Doc. 40) and supporting memorandum (Doc. 41 [hereinafter "WWE Mem."]).  Solar opposed that motion on January 17, 2014.  (Doc. 57 [hereinafter "Solar Opp'n"].)  Beyond confirming flawed premises underlying Solar's counterclaims and affirmative defenses, Solar's opposition failed to address, much less overcome, the myriad deficiencies in Solar's counterclaims and affirmative defenses identified in WWE's moving brief, as pointed out in WWE's reply on January 31, 2014.  (Doc. 66 [hereinafter "WWE Reply"].)  Of particular note, Solar failed even to oppose WWE's motion with respect to Solar's third and fifth counterclaims, which assert fraud and fraudulent inducement, respectively.

Following the WWE Reply, Solar moved on February 4, 2014 to amend its Response to WWE's Complaint.  (Doc. 67.)  In its proposed amended response (*see* Doc. 68 [hereinafter "proposed First Amended Response"], which is appended at the end of its supporting memorandum (also Doc. 68 [hereinafter "Solar Mem."]), Solar seeks to replead its fourth

---

[1] The Court denied Solar's motion to dismiss (Doc. 34), and Solar subsequently voluntarily dismissed its claims against Studio 23 (Doc. 47).  Fox's motion to dismiss the third-party claims against it (Doc. 58) is pending.

affirmative defense in an attempt to plead a claim for "anticipatory repudiation," to replead its third and fifth counterclaims in an attempt to plead claims for fraud and fraudulent inducement with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure, to replead its sixth counterclaim for tortious interference, and to add a new, seventh counterclaim for "bad faith." (*See generally* Solar Mem. and proposed First Amended Response.)

## II.   ARGUMENT

### A.   ALTERNATIVE RELIEF SOUGHT

Notwithstanding Solar's contention that its motion for leave to amend renders moot WWE's motion to dismiss and strike (Solar Mem. at 4), its proposed First Amended Response will supersede its original Response only if its motion for leave to amend is granted. The Court may take up WWE's earlier motion first and, if granted, then take up only the narrower question whether the proposed amended claims fare any better than the originals. In fact, the amended claims Solar proposes remain fatally defective. Accordingly, WWE hereby opposes the motion for leave to amend on grounds of futility. *See Foman v. Davis*, 371 U.S. 178, 182 (1962)(identifying futility of amendment as sufficient grounds for denial of leave to amend); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 50 (2d Cir. 1991)("Obviously, where a defect in the complaint cannot be cured by amendment, it would be futile to grant leave to amend.").

If Solar's motion is allowed, however, WWE renews its motion to dismiss and strike against the new pleading. *See Fredericks v. City of New York*, No. 12 civ. 3734, 2012 U.S. Dist. LEXIS 121708, *3 (S.D.N.Y. 2012)(concluding, where amended pleading moots original, movant may renew motion to dismiss). Accordingly, as discussed with the Court during the February 7 Status Conference, WWE's moves, in the alternative, to renew its motion to dismiss

3

and strike, and asks the Court to accept this memorandum in support of its renewed motion, along with WWE's original moving and reply briefs.

### B. SOLAR'S PROPOSED AMENDED CLAIMS ARE DEFICIENT AND FUTILE.

As WWE argued in support of its motion to dismiss and strike, and Solar's opposition brief confirmed, Solar's counterclaims and affirmative defenses are predicated on certain fundamentally false premises, including that (1) Solar somehow had a legal entitlement to the renewal or extension of its contracts with WWE upon their expiration; and (2) WWE was prohibited from negotiating with third-parties during the term of WWE's contracts with Solar for the license of rights upon the expiration of such contracts. Solar's proposed amended claims continue to rely on these same false premises.

Specifically, Solar seeks to revise its Fourth Affirmative Defense and its Third, Fifth and Sixth Counterclaims, and to add a new counterclaim as its Seventh Counterclaim.[2] Each of these amendments is deficient and futile, as explained below.

    *1. Solar' Proposed Fourth Affirmative Defense Is Deficient and Futile.*

As originally pled, Solar's Fourth Affirmative Defense asserted that Solar "was released" from its agreements with WWE when WWE allegedly "first committed a material breach thereof … [w]hen plaintiff began to fraudulently deal with Solar…." (Response ¶ 42.) In moving to strike Solar's Fourth Affirmative Defense, WWE identified four distinct defects with this claim: (1) Solar concedes it was itself in substantial and material breach of the parties' agreements before WWE allegedly engaged in any wrongdoing; (2) given Solar's misinterpretation of the parties' agreements, Solar had failed to allege any breach by WWE in the first instance; (3) Solar had failed to plead a cognizable fraud claim; and (4) an alleged fraud cannot have breached the

---

[2] Solar also withdraws its Fifth Affirmative Defense.

4

parties' contracts in any event. (WWE Mem. at 17.) Solar did not respond to any of these arguments. (*See* Solar Opp'n at 21-23 (skipping from Third Affirmative Defense to Sixth Affirmative Defense).)

Solar now proposes to replead its Fourth Affirmative Defense to assert "WWE anticipatorily repudiated its contractual obligations to Solar under the 2009 License Agreement and the other related agreements when WWE failed to provide Solar with advance notice and the right to a 30-day exclusive negotiation pursuant to paragraphs 1.4 and 2.2 of its desire or intent to license to a third-party the distribution of Pay-Per-View Programs or Special Programs." (Proposed First Amended Response ¶ 42.) Solar has thus deleted its claim that WWE breached the Pay-Per-View Agreement by dealing with Solar "fraudulently" and substituted a claim that WWE supposedly anticipatorily repudiated the Pay-Per-View Agreement by "enter[ing] into negotiations with third-party broadcasters in or around the Fall / Winter of 2011, which ultimately ended up with an agreement being executed between WWE and the third party in early 2012." (*Id.* ¶ 43.)

This amendment utterly fails to address the primary defects in Solar's existing claim.[3] First, Solar expressly asserts that WWE's allegedly repudiating conduct occurred "in or around the Fall / Winter of 2011." (*Id.*) Yet, as pointed out in support of WWE's motion to strike, Solar concedes that it was itself by this time in substantial and material breach of both the Television Agreement and Pay-Per-View Agreement. (*See, e.g.*, proposed First Amended Response ¶¶ 82-83 & Ex. G (admitting unpaid license fees going back months, and even years).) Second, as explained in WWE's moving brief and reply, nothing in the Pay-Per-View Agreement prevented WWE from entering into negotiations with third parties to license broadcasting rights to

---

[3] It "cures" the defects related to claiming fraud simply by deleting any such claim.

commence after the term of WWE's agreements with Solar.  (*See* WWE Mem. at 5-7; WWE Reply at 3-6.)  Because Solar's proposed Fourth Affirmative Defense depends entirely on the false premise that WWE was prohibited from speaking with third parties regarding the licensing of broadcast rights to commence after the expiration of WWE's contracts with Solar, its defense still fails to state a claim and is futile.

Moreover, WWE's alleged failure to notify Solar of its negotiations with third parties does not constitute anticipatory repudiation of the Pay-Per-View Agreement in any event.  Under Connecticut law, "[a]nticipatory breach of contract occurs when a party communicates a definite manifestation of intent not to render the promised performance at the contractually agreed upon time."  *Andy's Oil Service, Inc. v. Hobbs*, 125 Conn. App. 708, 722, 9 A.3d 433, 442 (2010); *see also Martin v. Kavanewsky*, 157 Conn. 514, 518-19, 255 A.2d 619, 621 (1969) (describing anticipatory repudiation as "a total breach of contract").  No such thing occurred here.  On the contrary, even assuming WWE had remaining obligations under the Pay-Per-View Agreement at the time of its alleged negotiations with any third parties, it is undisputed that WWE continued to provide Solar with pay-per-view and special programs for broadcast to Solar's customers through the expiration of the Pay-Per-View Agreement (as well as the 2011 Deal Memo).  Solar's claim of anticipatory repudiation, therefore, fails as a matter of law and consequently its proposed amendment is futile.

      2.  *Solar's Proposed Third Counterclaim Is Deficient and Futile.*

Though Solar's proposed Third Counterclaim attempts to state a claim for fraud, nowhere in Solar's proposed amended counterclaim does Solar identify *any* false statement by WWE.  Rather, Solar's fraud claim appears to be based on an alleged *omission* of material fact.  Connecticut law is clear, however, that "[m]ere nondisclosure . . . does not ordinarily amount to

fraud." *Duart v. Department of Corrections*, 303 Conn. 479, 525 n.17, 34 A.3d 343, 369 n.17 (2012) (quoting *Egan v. Hudson Nut Prods., Inc.*, 142 Conn. 344, 347, 114 A.2d 213, 214 (1955)).  "It is only in exceptional circumstances that fraud can be based on nondisclosure." *Creelman v. Rogowski*, 152 Conn. 382, 385, 207 A.2d 272, 274 (1965).  "To constitute fraud by nondisclosure or suppression, there must be a failure to disclose known facts and, as well, a request or an occasion or a circumstance which imposes a duty to speak." *Ceferatti v. Bolsvert*, 137 Conn. 280, 283, 77 A.2d 82, 84 (1950).  In this regard, the Connecticut Supreme Court has relied on the Restatement (First) of Restitution § 8, comment b, which provides that "[e]xcept in a few special types of transactions, such as insurance contracts and transactions between a fiduciary and his beneficiary, there is no general duty upon a party to a transaction to disclose facts to the other party." *Id.*; *see also Haddad v. Clark*, 132 Conn. 229, 233, 43 A.2d 221, 223 (1945)(quoting Restatement (First) of Restitution § 8, comment b).  Thus, "[s]ilence is not actionable in a transaction in which parties deal at arm's length unless circumstances or the existence of a confidential relationship gives rise to a duty to speak." *Franchey v. Hannes*, 152 Conn. 372. 378, 207 A.2d 268271 (1965).  No such special circumstances existed here.

     The alleged omission underlying Solar's fraud claim is an alleged *contractual* duty to speak. (*See* proposed First Amended Response ¶ 91 ("WWE engaged in fraud and misrepresentation because at no time during the negotiations was Solar provided notice that the programming was being offered to third parties even though Plaintiff WWE was *contractually* required to provide such notice under the 2009 License Agreement") (emphasis added); *id.* ¶ 98 ("WWE's actions constitute fraud/misrepresentation because WWE waited until after the 2001 Deal Memo was signed and Solar had agreed to pay $21,000 for additional programming to notify Solar that [other] programming was no longer available…. Plaintiff WWE disregarded its

7

obligations *under the 2009 Pay-Per-View License Agreement* and did not provide Defendant Solar with advance notice of its intent to contract with a third party.  This constitutes *breach*.")(emphasis added).)[4]  Fatally, however, there was no fiduciary relationship between the parties and the contract at issue plainly was not an insurance contract.  As such, there were no special circumstances between the parties to impose on WWE any duty to speak under Connecticut law.  In effect, Solar is improperly attempting to parlay an alleged breach of contract into a claim for fraud.  *See, e.g., Gazo v. City of Stamford*, 255 Conn. 245, 262, 765 A.2d 505, 515 (2001) ("An action in contract is for the breach of a duty arising out of a contract; an action in tort is for a breach of duty imposed by law.").

Accordingly, Solar's claim for fraud fails for three distinct reasons:  (1) there were no special circumstances between the parties to give rise to a claim of fraud by nondisclosure under Connecticut law; (2) Solar  has failed to identify with the required specificity any fraudulent statement (including any omission of material fact necessary to make a statement actually made not misleading), *see Estate of Axelrod v. Flannery*, 476 F.Supp.2d 188, 192 (D. Conn. 2007)(concluding Rule 9(b) requires claimant to detail, *inter alia*, the fraudulent statements or

---

[4] Solar also baldly alleges that, on December 20, 2011, WWE's representative Augustine Tan "fraudulently induced Defendant Solar to sign a deal memo that would add [two pay-per-view programs], allow all contracts beween WWE and Defendant Solar to end at the same time (March 2012), and allow for an unhurried negotiation …," when "Mr. Tan knew or should have known that the Television and PPV/Special Programs license agreements between Plaintiff WWE and Defendant Solar were not going to be renewed and that Plaintiff WWE were [sic] entertaining alternate offers."  (Proposed First Amended Response ¶ 95.)  This conclusory allegation glaringly omits to specify what Mr. Tan said that supposedly was false.  Solar concedes that the parties did, in fact, sign a deal memo (*id.* ¶ 108), that WWE did, in fact, make additional programming available to Solar (*id.*), and that WWE did, in fact, continue to negotiate (*id.* Ex. F).  It is thus unclear how Mr. Tan misled Solar.  Solar also fails to allege where Tan supposedly made such a misrepresentation.  A December 20, 2011 e-mail from Tan to Solar simply attaches a proposed deal memo without elaborating.  (Proposed First Amended Response Ex. E.)  Moreover, given Solar's refusal to pay for the additional programming provided, Solar was not harmed by any unidentified misrepresentation.

omissions and explain why they are fraudulent); and (3) it again rests on the false premise that WWE had a contractual duty to notify Solar that WWE was speaking to third parties regarding the licensing of broadcast rights to commence after the term of WWE's contracts with Solar.

    3.   *Solar's Proposed Fifth Counterclaim Is Deficient and Futile.*

Solar's proposed fifth counterclaim purports to state a cause of action for fraudulent inducement. It fails, however, to identify with the required specificity any false representation by WWE.

The closest Solar comes to identifying any false statement is its allegation that "Solar had relied upon the statement of Mr. Tan, a representative of WWE[,] that the execution of the 2011 Deal Memo would lead to an extension of the license period." (Proposed First Amended Response ¶ 106.) However, Solar has failed to specify, as required, where and when Mr. Tan allegedly made this statement. *See Estate of Axelrod*, 476 F.Supp.2d at 192 (concluding Rule 9(b) requires claimant to allege where and when the fraudulent statement or omission was made). Solar's omission is particularly significant because written communications between Mr. Tan and Solar attached to the proposed First Amended Response fall demonstrably short of the alleged fraud. For example, in a December 2, 2011 e-mail, Mr. Tan wrote:

> Moving forward from our discussion last week, I understand you are in the midst of coming back with a revised offer before ATF [conference]. As mentioned, the current PPV deal ends at the end of this month and instead of rushing thru the renewal process, could we extend the current PPV deal to Feb '12, so that it will be concurrent with the rest of the WWE package?

(Proposed First Amended Response Ex. D.) Conspicuously absent from this writing is the alleged misrepresentation; i.e., that the license period would be extended.[5] Instead, on its face,

---

[5] In paragraph 95, incorporated by reference in Solar's proposed Fifth Counterclaim, Solar identifies a December 20, 2011 communication from Mr. Tan. On December 20, 2011, Mr. Tan wrote to Solar simply that WWE was "happy to extend the current PPV deal to include Royal

9

Tan's e-mail asked to extend the current pay-per-view deal to February simply so that the "renewal *process*" would not be rushed. Nothing in his e-mail represented that any of Solar's contracts with WWE, in fact, would be renewed.[6]

In short, because the proposed fifth counterclaim fails to allege any fraudulent statement with the specificity required by Rule 9(b), the proposed amendment fails to state a claim and so is futile.

    4. *Solar's Proposed Sixth Counterclaim Is Deficient and Futile.*

Solar's proposed sixth counterclaim attempts to assert a claim for tortious interference with prospective business relations. In support of its motion to dismiss, WWE pointed out that Solar's claim, as initially pled, was deficient in multiple respects, including failure to plead: (1) WWE's knowledge of any particular relationship with a specific customer, (2) that WWE intended to interfere with any of Solar's business relationships, (3) that WWE interfered directly with any of Solar's business relationships, and (4) that WWE did anything wrongful. (WWE Mem. at 13-14; *see also* WWE Reply at 7-8.) Solar opposed simply on the grounds that WWE was necessarily aware that Solar had cable customers (Solar Opp'n at 17) and WWE's "failure" to accord Solar a right of first refusal was allegedly wrongful (*id.* at 17-18).

By its amended counterclaim, Solar now seeks simply to plead the arguments in its opposition memorandum. For example, paragraph 113 of its proposed First Amended Response merely sets forth conclusions of law. (*See* proposed First Amended Response ¶ 113 (alleging what "the law protects").) The only arguably factual allegations Solar seeks to add refer to

---

Rumble (Jan '12) and Elimination Chamber (Feb '12). Please see the attached [Deal Memo.]" (Proposed First Amended Response Ex. E.) That e-mail included no false representations.

[6] Nor is there any dispute that WWE *did* offer Solar the opportunity to continue to broadcast certain WWE programming. (*See* proposed First Amended Response Ex. F.)

Solar's relationship with its entire customer base.  (*See* proposed First Amended Response ¶ 112 (alleging "Solar's relationship with its customer base was a crucial factor in the business relationship between WWE and Solar….")  The amended allegations continue to fail to identify any specific customer, as required.  (*See* WWE Mem. at 13-14.)  Nor does Solar allege any intent on the part of WWE to interfere with those relationships (save, indirectly, merely by letting its license agreements expire without renewal), as also required.  (*See id.*)  Accordingly, Solar's proposed Sixth Counterclaim continues to fail to state a cause of action and is futile.

       5.   *Solar's Seventh Counterclaim Is Deficient and Futile.*

Finally, Solar's proposed seventh counterclaim purports to state a cause of action for "bad faith."  Though new in the sense that Solar's initial response did not include a seventh counterclaim, Solar's proposed seventh counterclaim is duplicative of its existing second counterclaim, which also attempts to assert a cause of action for breach of the duty of good faith and fair dealing.  (*See* Response Countercl. 2; proposed First Amended Response Countercl. 2.)  Indeed, Solar makes clear that the Seventh Counterclaim is simply a claim for breach of the duty of good faith and fair dealing.  (*See* Solar Mem. at 6 (setting forth elements of a claim for "bad faith," including requirements that defendant was party to a contract under which plaintiff reasonably expected to receive benefits and defendant in bad faith deprived plaintiff of benefits it reasonably expected to receive under the contract).)

Thus, like its other claims, including its First and Second Counterclaims, Solar's proposed Seventh Counterclaim depends on the false premise that WWE had a duty under the Pay-Per-View Agreement to give Solar notice and a 30-day exclusive right to negotiate for rights outside the term of that contract and indeed after the expiration of Solar's rights to broadcast WWE programming entirely.   (*See* proposed First Amended Response ¶¶ 120-121.)

Accordingly, Solar's proposed Seventh Counterclaim is deficient and futile for the same reasons as its Second Counterclaim for breach of the duty of good faith and fair dealing and its First Counterclaim for breach of contract.  (*See* WWE Mem. at 5-8; WWE Reply at 3-6 & n.2.)

### III.   CONCLUSION

For all of the foregoing reasons, Solar's motion for leave to amend should be denied. In the alternative, if the Court grants Solar's motion for leave to amend, WWE respectfully requests that the Court (a) accept this memorandum in support of a renewed motion to dismiss and strike (*see* Doc. 40), and (b) dismiss all of Solar's counterclaims, including its new and revised counterclaims, and strike all of Solar's affirmative defenses, including its revised defense.

Respectfully submitted,

WORLD WRESTLING ENTERTAINMENT, INC.

/s/ Jonathan B. Tropp
Jonathan B. Tropp (ct11295)
DAY PITNEY LLP
One Canterbury Green
Stamford, CT  06901
Telephone:  (203) 977-7300
Facsimile:  (203) 977-7301
E-mail:  jbtropp@daypitney.com

Jerry S. McDevitt (ct11783)
Curtis B. Krasik (ct20427)
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA  15222
Telephone:  (412) 355-8608
Facsimile:  (412) 355-6501
E-mail:  jerry.mcdevitt@klgates.com

*Counsel for World Wrestling Entertainment, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of February, 2014, the foregoing memorandum was filed electronically and served on the following counsel through the Court's CM/ECF System:

Kevin R. Joiner
Law Office of Kevin R. Joiner, LLC
1 Congress Street, Suite 212
Hartford, CT 06114
Telephone: (860) 524-9920
E-mail: kjoiner@klegalservices.com

Christine A. Dixon
11024 Mill Centre Drive
Owings Mills, MD 21117
Telephone: (443) 621-0254
E-mail: cadixon@christineadixonattorneyatlaw.com

                                                /s/ Jonathan B. Tropp
                                                Jonathan B. Tropp