```
 1                UNITED STATES DISTRICT COURT

 2              FOR THE DISTRICT OF CONNECTICUT

 3


 4   - - - - - - - - - - - - - - - x
                                   :
 5   WORLD WRESTLING               :  No. 3:13CV125(RNC)
       ENTERTAINMENT, INC.,        :
 6                                 :
                    Plaintiff,     :
 7                                 :
             vs                    :
 8                                 :
     SOLAR ENTERTAINMENT,          :
 9                                 :  HARTFORD, CONNECTICUT
                    Defendant.     :  July 16, 2014
10                                 :
     - - - - - - - - - - - - - - - x
11

12

13                   TELEPHONE CONFERENCE

14

15

16        BEFORE:

17             HON. ROBERT N. CHATIGNY, U.S.D.J.

18

19

20

21

22                              Darlene A. Warner, RDR-CRR
                                Official Court Reporter
23

24

25
```

```
 1    APPEARANCES:

 2        FOR THE PLAINTIFF:

 3            DAY PITNEY LLP-STMFD
                  One Canterbury Green
 4                Stamford, Connecticut 06901
             BY:  JONATHAN B. TROPP, ESQ.
 5
              K & L GATES, LLP
 6                K & L Gates Center
                  210 Sixth Avenue
 7                Pittsburg, Pennsylvania 15222-2312
             BY:  CURTIS B. KRASIK, ESQ.
 8
          FOR SOLAR ENTERTAINMENT:
 9
              CHRISTINE A. DIXON, ATTORNEY AT LAW
10                11024 Mill Center Drive
                  Owings Mills, Maryland 21117
11           BY:  CHRISTINE A. DIXON, ESQ.

12            LAW OFFICES OF KEVIN R. JOINER, LLC
                  1 Congress Street, Suite 206
13                Hartford, Connecticut 06114
             BY:  KEVIN R. JOINER, ESQ.
14

15        FOR FOX INTERNATIONAL CHANNELS PHILIPPINES:

16            SHIPMAN & GOODWIN
                  300 Atlantic St., Suite 300
17                Stamford, CT 06901-3522
             BY:  SHARI M. GOODSTEIN, ESQ.
18

19

20

21

22

23

24

25
```

1                              3:00 P.M.

2

3            MR. TROPP:  Good afternoon, Your Honor, Jonathan

4    Tropp with Day Pitney for plaintiff World Wrestling

5    Entertainment, and with me on the call is my colleague,

6    Curtis Krasik.

7            MR. KRASIK:  Good afternoon, Your Honor.

8            THE COURT:  Good afternoon.

9            MS. DIXON:  This is Christine Dixon with

10   defendant Solar Entertainment Corporation, and with me I

11   have Kevin Joiner also with Solar Entertainment Corp.

12           THE COURT:  Good afternoon.

13           MS. GOODSTEIN:  Your Honor, this is Shari

14   Goodstein from Shipman & Goodwin representing the

15   counterclaim defendant FIC Philippines.

16           THE COURT:  Good afternoon.

17           Is there anybody else on the line?

18           MR. TROPP:  No, Your Honor, that's everybody.

19   That was just Mr. Joiner saying good afternoon.

20           THE COURT:  Okay, thank you.  I apologize for

21   keeping you waiting.

22           This is a conference that the parties requested

23   to talk about where things stand.  In preparation for this

24   conference, I undertook to be in a position to give you

25   rulings on the pending motions and I propose to do that at

1  the outset.  After that, we can talk about where we are.

2  We have a motion to dismiss filed by FIC
3  Philippines based on forum non conveniens and also failure
4  to state a claim.  I'm granting that motion for
5  substantially the reasons stated by FIC Philippines in its
6  supporting memoranda, especially its reply memo.

7  The third-party complaint seeks to recover from
8  FIC Philippines based on conduct that occurred in the
9  Philippines and for an injury sustained there.  Both
10 entities are Philippian entities, it appears that the
11 witnesses are located in the Philippines and the relevant
12 documents are in the Philippines.  It also appears that
13 the law of the Philippines would govern.

14 The parties analyze the forum non conveniens
15 issue under Second Circuit law in a manner that confirms
16 for me that the case belongs in the Philippines, not
17 Connecticut.

18 The parties disagree about the deference that
19 should be accorded the plaintiff's choice of forum, or
20 more accurately, Solar's choice of forum.  I understand
21 that Solar would like to proceed here now that its motion
22 to dismiss has been denied, but as FIC Philippines argues,
23 Solar's consent to suit in Connecticut shouldn't provide a
24 basis for requiring FIC Philippines to litigate in
25 Connecticut in connection with a dispute that occurred in

1     the Philippines based on events that occurred in the

2     Philippines, and I think in the circumstances to treat

3     Solar's choice of forum as Solar would wish me to do would

4     not be proper.

5                Does an adequate alternative forum exist?  Solar

6     says it might not be able to get jurisdiction over WWE in

7     the Philippines.  Solar identifies no other reason to

8     think that the Philippines would not be an adequate forum.

9     The Philippines does permit suits for business torts and

10    the Second Circuit has recognized more than once that the

11    Philippines provided an adequate alternative forum for

12    business litigation.

13                Looking at the so-called private factors, with

14    regard to the ease of access to sources of proof, the

15    witnesses are in the Philippines, the documents are in the

16    Philippines, the parties appear to disagree about whether

17    letters rogatory would be necessary to obtain documents

18    from the Philippines.  I'm not in a position to decide

19    that issue, but it does appear that the process would be

20    more complicated if we were to proceed here than it would

21    be if you were to proceed there.

22                We don't have compulsory process in Connecticut

23    that would extend to witnesses based in the Philippines.

24    FIC Philippines points out that witnesses could not be

25    compelled to testify by deposition in this action.

1                With regard to public factors, local disputes
2     should be resolved in a local forum, that means the
3     Philippines in this instance.  We are supposed to try to
4     avoid the difficulty of applying foreign law.  That factor
5     is relevant here because it appears that the law of the
6     Philippines would govern, and we're supposed to avoid
7     burdening jurors by requiring them to decide cases that
8     have nothing to do with their community.  The Philippines
9     has a great interest in this dispute between its corporate
10    entities, Solar and FIC Philippines, Connecticut does not.
11               I think that for these reasons the motion to
12    dismiss based on forum non conveniens should be granted,
13    and so I grant that motion.
14               With regard to the pending motion to dismiss the
15    counterclaims and affirmative defenses, I conclude that
16    the motion should be granted as to the counterclaims
17    essentially for the reasons stated by WWE.  I don't think
18    that Solar has a contract-based claim.  Solar concedes
19    that there was no binding agreement to renew.  It urges
20    that there was a binding agreement to negotiate in good
21    faith.
22               Looking at the allegations and the applicable
23    law, I conclude that the contract-based theory is
24    insufficient.  Even assuming that Solar could demonstrate
25    that there was a binding promise by WWE to negotiate for

1   renewal in good faith -- and I don't believe such a
2   binding promise has been adequately alleged -- I don't
3   think the emails on which Solar relies show bad faith on
4   the part of WWE.  So I think that the motion to dismiss
5   the first counterclaim for breach of contract as well as
6   the counterclaims that rely on the existence of the
7   contract, specifically the second and seventh
8   counterclaims for breach of the implied covenant of good
9   faith and for bad faith respectively should be granted.
10            Solar also asserts tort claims for fraud or
11   misrepresentation, fraudulent inducement and tortious
12   interference.  I do not think that these claims are
13   adequately pleaded as required by Rule 9(b) and
14   Connecticut law.
15            Reading the non conclusory factual allegations
16   in a light most favorable to Solar, I do not see a false
17   statement of fact on which Solar relied to its detriment
18   as required to support a claim for fraudulent
19   misrepresentation or fraudulent inducement.
20            And with regard to tortious interference, even
21   assuming WWE somehow breached a duty to negotiate, WWE
22   merely ended its contractual relationship with Solar, and
23   I don't see a well-pleaded allegation of wrongful intent
24   that would support a tortious interference claim.
25            So in summary, while Solar may have expected to

1  be able to reach a renewal agreement, I don't see that it
2  had a contractual or tort-based right to enforce its
3  expectation.  I don't think that the parties' interactions
4  as disclosed by the supporting materials gave rise to a
5  binding agreement to negotiate a renewal.  But even
6  assuming there was such a binding agreement, which again I
7  do not find to be the case, the material Solar relies on
8  indicates that WWE did not stonewall or act in bad faith
9  and I don't see a false or misleading statement supporting
10 the tort claims or allegations supporting specifically the
11 requirement of intent on the tortious interference claim.
12           And as to the fourth counterclaim,
13 unconscionability is a defense, not a cause of action.  On
14 these grounds I think that WWE's motion to dismiss the
15 counterclaims should be granted.
16           WWE has moved to dismiss the affirmative
17 defenses, or rather to strike the affirmative defenses,
18 and I'm not sure what I need to do to deal with the
19 affirmative defenses in light of my grant of the motion to
20 dismiss the counterclaims, but it would seem to me that
21 since the counterclaims have been dismissed, at least some
22 of these affirmative defenses would necessarily be out of
23 the case as well.  In any case, I'm not sure why striking
24 them is necessary to avoid prejudice to WWE.
25           In the request for a status conference, WWE

1  indicates that additional limited discovery may be
2  necessary to resolve affirmative defenses.  Perhaps
3  counsel for WWE could clarify the situation and identify
4  the discovery that would need to be done.
5              MR. TROPP:  Your Honor, thank you very much for
6  articulating your ruling and the frame for our discussion.
7              As I understood the issues, some of the
8  discovery that we contemplated as likely to be necessary
9  was on the assumption that one or more of the
10 counterclaims might survive.  It's less clear to me what
11 discovery might be necessary based upon the affirmative
12 defenses.  And in particular I take your point that some
13 of the defenses may have no meaning any longer.  But I
14 confess as I sit here this minute, I can not articulate
15 what discovery might be required based upon Your Honor's
16 ruling with all the counterclaims out and the defenses not
17 yet touched.
18             I'm happy to try to take a look and answer that
19 question and/or to submit something in writing, but it may
20 be that Mr. Krasik, even on this call, could do a better
21 job than I, and I would ask him to do so if he can.
22             MR. KRASIK:  Yes, Your Honor.  Curt Krasik.  I
23 apologize for the double teaming, but it's difficult on a
24 telephonic conference, as I'm sure Your Honor appreciates.
25             I think that our reference to potentially

1   additional limited discovery was in the event that Your

2   Honor either denied our motion to dismiss and to strike

3   or -- and then denied a contemplated motion for summary

4   judgment that we sought permission to file.

5            So based on Your Honor's rulings today, I don't

6   think there is any additional discovery, and so if that's

7   right, then we completely agree, WWE would not be

8   prejudiced.  If Solar were to disagree with that and Your

9   Honor were to agree with Solar, then there could be some

10  conceivable prejudice.

11           But in summary, we agree with you, we don't

12  think there is any additional discovery to do on any of

13  the affirmative defenses and we can move forward.

14           THE COURT:  All right then.  Thank you.

15           Where does this leave us?  You want to be able

16  to file a motion for summary judgment?

17           MR. TROPP:  Yes, Your Honor.  The sense is that

18  obviously we think that on our claims we would be entitled

19  to judgment subject only to the defenses, and we do

20  believe that the defenses can be resolved against Solar as

21  a matter of law if they're not being stricken today.

22           THE COURT:  Well, in these circumstances I don't

23  see a need to strike them, and I would think that it would

24  make sense to leave them and see what happens when you

25  move for judgment.

1              If I'm missing something, I'd be happy to take a
2    closer look, but it sounds like the motion for summary
3    judgment would bring before the Court issues of law
4    including the viability of any affirmative defense and I
5    could deal with it then.
6              MR. TROPP:  That will be fine from the
7    perspective of WWE, Your Honor.
8              THE COURT:  Okay.  Well, you have a perfect
9    right to file your motion for summary judgment, and if
10   you're satisfied that you don't need to do any further
11   discovery in order to be able to make the motion, then
12   it's just a question of timing with regard to the filing
13   of the motion.
14             MR. TROPP:  Yes, Your Honor.  Maybe before we
15   talk about that, if I could interject one other issue?
16   This is Jonathan Tropp.  I guess I'll raise it from two
17   different perspectives -- three different perspectives.
18             The first is Your Honor may be glad to hear that
19   the parties have already been talking about the
20   possibility of settling this case.
21             The second is obviously Your Honor's rulings
22   today help to narrow the issue that may facilitate
23   settlement.
24             And the third is that Your Honor's scheduling
25   order in this case, although it applies only between WWE

1   and Solar, has a required settlement conference, supposed
2   to be held this month in July, although nothing is on the
3   calendar.
4   　　　　And what I'm wondering, Your Honor, is whether
5   it might make sense to, in light of those three factors,
6   schedule the settlement conference sooner and the summary
7   judgment papers later.
8   　　　　THE COURT:  That's fine with me.  I'm glad to
9   know that you've been talking about trying to resolve it
10  and I'd be happy to hold off on the motion until you've
11  had a chance to attend a settlement conference.
12  　　　　Should we proceed that way?
13  　　　　MR. JOINER:  Your Honor, this is Kevin Joiner.
14  　　　　THE COURT:  Yes?
15  　　　　MR. JOINER:  We certainly aren't opposed to that
16  and would entertain the option to have a settlement
17  conference before the filing of the summary judgment
18  motion.
19  　　　　THE COURT:  Okay, very good.
20  　　　　I'm not sure about the availability of Judge
21  Martinez to conduct this conference in the near future,
22  but I will inquire.  If it should turn out that she is not
23  available, would you consider seeing a different
24  magistrate judge?
25  　　　　MR. TROPP:  Does Your Honor have somebody in

```
 1    mind specifically or is that in the abstract?
 2              THE COURT:  My thought was that if Judge
 3    Martinez is not available, I would reach out to Judge
 4    Garfinkel.
 5              MR. TROPP:  We would be fine with that, Your
 6    Honor.
 7              THE COURT:  Mr. Joiner?
 8              MR. JOINER:  What Judge would that be?  I didn't
 9    catch the name.
10              THE COURT:  Judge Garfinkel.
11              MR. JOINER:  Okay.  I don't want to speak
12    for Solar.  I probably want to discuss it with Attorney
13    Dixon.  I don't know if she has any thoughts right now.
14    I'm not sure if she's familiar with the judges here.
15              THE COURT:  That's fine.  I'll inquire with the
16    judge's chambers and find out what her availability would
17    be and we'll let you know.
18              MR. TROPP:  Okay.
19              THE COURT:  All right?
20              MR. JOINER:  Okay.
21              MR. TROPP:  Does Your Honor want to then hold in
22    abeyance our request for a date by which to file summary
23    judgment papers?  Or do you want to set something in the
24    future for a time for presumably after the mediation?
25              THE COURT:  Why don't we hold it in abeyance for
```

1   now and see if we can't establish a date for the mediation
2   and go from there.
3               MR. TROPP:  That would be fine, Your Honor,
4   thank you.
5               MR. JOINER:  That's fine, Your Honor.
6               THE COURT:  All right.  Then we'll proceed that
7   way.
8               Is there anything else that anybody would like
9   to raise while we're together on the phone at this time?
10              MR. TROPP:  Not for WWE, Your Honor.
11              MS. GOODSTEIN:  Not for FIC Philippines.
12              MR. JOINER:  Not for us at this time, Your
13  Honor.
14              THE COURT:  Thank you very much.
15                  (Proceedings adjourned at 3:40 p.m.)
16
17
18
19
20
21
22
23
24
25

C E R T I F I C A T E

In Re: WWE vs. SOLAR

    I, Darlene A. Warner, RDR-CRR, Official Court Reporter for the United States District Court for the District of Connecticut, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.

/s/_____

DARLENE A. WARNER, RDR-CRR
Official Court Reporter
450 Main Street, Room #223
Hartford, Connecticut 06103
(860) 547-0580